UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMIE DUVON CHAFFIN, | : | CIVIL ACTION NO. 3:CV-14-0696 |
| Plaintiff | : | (Judge Nealon) |
| v. | : | |
| S. ELLENBERGER, et al., | : | FILED SCRANTON |
| Defendants | : | APR 2 3 2014 |

**MEMORANDUM**

PER _____ DEPUTY CLERK

**BACKGROUND**

Plaintiff, Jamie Duvon Chaffin, an inmate formerly confined in the Rockview State Correctional Institution (SCI-Rockview), Bellefonte, Pennsylvania, filed the above captioned civil rights action pursuant to 42 U.S.C. § 1983.[1] Along with his complaint Chaffin filed an application seeking leave to proceed in forma pauperis in this matter. The named Defendants are S. Ellenberger, Hearing Examiner; M. C. Garman, Deputy Superintendent for Centralized Services; M. Boyles, Deputy Superintendent for Facilities Management; and T. Miller, Program Management.

Chaffin claims that he was convicted of a Class I misconduct for assault

---

1. Plaintiff is currently housed in the Forest State Correctional Institution, Marienville, Pennsylvania.

on another inmate, but that the other inmate had "confided in [him] to help him" and that Plaintiff "didn't and wouldn't help him." (Doc. 1, complaint at 2). Specifically, Plaintiff alleges that on January 14, 2014, inmate Glover called to Plaintiff, who was in the dinner line, and asked him to leave the dinner line to follow him back to Plaintiff's cell. Id. at p. 3. Plaintiff states that once back at his cell, he "took [his] spring jacket off and rolled a cigarette and sat on the stool facing the door way", while Glover told Plaintiff he had been "robbed and stabbed." Id. Plaintiff claims that he asked Glover to "show [him] where he was stabbed", and the inmate "lifted up his sweatshirt and his wife beater (athletic shirt) that was bloody and showed [Plaintiff] a wound under his right arm." Id. Plaintiff told Glover that "he needed to take a shower first to get the blood off him." Id. Plaintiff claims that he then walked Glover to his cell to "get his shower stuff" and that on the way, the inmate "started taking with someone in a confidential manner", so Plaintiff "turned and walked off the tier." Id. Plaintiff claims that "about an hour later, [he] was being hand cuffed and took to Administrative Custody." Id.

On February 14, 2014, Plaintiff was convicted of a Class I assault and "told by Captain Vance that inmate Glover was pressing charges." Id. Plaintiff maintains that he "never touched or did anything with any violence towards Mr. Glover." Id.

On April 9, 2014, Plaintiff filed the instant action in which he seeks to "be freed of the aggravated assault as well as make the Defendant pay for the legal fees upon [him] winning." (Doc. 1, complaint at 3). He also requests "the maximum money allowed give for every day [he] was held in solitary confinement", as well as "to not get transferred due to [his] filing this civil rights claim."

For the reasons that follow, the complaint will be dismissed as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(i).[2] When considering a complaint accompanied by a motion to proceed in forma pauperis, a district court may rule that process should not be issued if the complaint is malicious, presents an unquestionably meritless legal theory, or is predicated on clearly baseless factual averments. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989); Wilson v. Rackmill, 878 F.2d 772, 774 (3d Cir. 1989). Unquestionably meritless legal theories are those

---

2. Section 1915(e)(2) of Title 28 of the United States Code provides:

> (2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that - (A) the allegation of poverty is untrue; or (B) the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim upon which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief.

"'in which either it is readily apparent that the plaintiff's complaint lacks an arguable basis in law or that the defendants are clearly entitled to immunity from suit. . . .'" Roman v. Jeffes, 904 F.2d 192, 194 (3d Cir. 1990) (quoting Sultenfuss v. Snow, 894 F.2d 1277, 1278 (11th Cir. 1990)). Clearly baseless factual contentions describe scenarios "clearly removed from reality." Id. "[T]he frivolousness determination is a discretionary one," and trial courts "are in the best position" to determine when an indigent litigant's complaint is appropriate for summary dismissal. Denton v. Hernandez, 504 U.S. 25, 33 (1992). When reviewing a complaint for frivolity under § 1915(d), the court is not bound, as it is on a motion to dismiss, "to accept without question the truth of the plaintiff's allegations." Id. at 32.

**Discussion**

The filing of a false misconduct report does not violate an inmate's due process rights. The general rule, as stated in Freeman v. Rideout, 808 F.2d 949, 951 (2d Cir. 1986), provides that a "prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest. The Plaintiff, as all other prison inmates, has the right not to be deprived of a protected liberty interest

without due process of law." Thus, where a prisoner is provided due process, no constitutional violation results from his being falsely accused of a misconduct.

The Fourteenth Amendment of the United States Constitution provides in pertinent part: "No State shall. . .deprive any person of life, liberty, or property, without due process of law. . . ." The Supreme Court has mandated a two-part analysis of a procedural due process claim: first "whether the asserted individual interests are encompassed within the . . . protection of 'life, liberty or property[,]'" and second, "if protected interests are implicated, we then must decide what procedures constitute 'due process of law'." Ingraham v. Wright, 430 U.S. 651, 672 (1977). If there is no protected liberty or property interest, it is unnecessary to analyze what procedures were followed when an alleged deprivation of an interest occurred. In Wolff v. McDonnell, 418 U.S. 539, 563-73 (1974), where the plaintiffs were deprived of good time credits as a severe sanction for serious misconduct, the Supreme Court held that such inmates had various procedural due process protections in a prison disciplinary proceeding, including the right to call witnesses and to appear before an impartial decision-maker.[3]

---

3. In Wolff, the Supreme Court recognized that "prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Id. at 556. Nonetheless, the Supreme Court held that a prisoner facing serious institutional sanctions is entitled to some procedural protection before penalties can be imposed. Id. at

Thereafter, the Court in <u>Hewitt v. Helms</u>, 459 U.S. 460, 471 (1983), determined that a state law which "used language of an unmistakably mandatory character" creates a protected liberty interest. Following <u>Hewitt</u> many courts held that a state regulation can create a due process interest -- such as freedom from punitive segregation -- if the rule contains mandatory language such as "shall" or "will." <u>See, e.g.</u> <u>Layton v. Beyer</u>, 953 F.2d 839, 848-49 (3d Cir. 1992).

The Court's decision in <u>Sandin v. Conner</u>, 515 U.S. 472 (1995), however, marked a shift in the focus of liberty interest analysis from one "based on the language of a particular regulation" to "the nature of the deprivation" experienced by the prisoner. <u>Id.</u> at 481. In <u>Sandin</u>, the Court was presented with the procedural due process claims of a state prisoner who had been found guilty of misconduct and sentenced to thirty (30) days in disciplinary segregation. <u>Id.</u> at

---

563-71. The Supreme Court set forth five requirements of due process in a prison disciplinary proceeding: (1) the right to appear before an impartial decision-making body; (2) twenty-four hour advance written notice of the charges; (3) an opportunity to call witnesses and present documentary evidence, provided the presentation of such does not threaten institutional safety or correctional goals; (4) assistance from an inmate representative, if the charged inmate is illiterate or if complex issues are involved; (5) a written decision by the fact finders as to the evidence relied upon and the rationale behind their disciplinary action. <u>Id.</u>

An additional procedural requirement was set forth in <u>Superintendent, Massachusetts Correctional Inst. at Walpole v. Hill</u>, 472 U.S. 445, 453-56 (1985). In that case, the Court held that there must be some evidence which supports the conclusion of the disciplinary tribunal.

474-76. The Court first found that the approach adopted in <u>Hewitt</u>, described above, was unwise and flawed. <u>Id.</u> at 481-84. The Court also rejected plaintiff Conner's argument that "any state action taken for punitive reasons encroaches upon a liberty interest under the Due Process Clause even in the absence of any state regulation." <u>Id.</u> at 484. The Court reasoned, <u>inter alia</u>, that "[d]iscipline by prison officials in response to a wide range of misconduct" is expected as part of an inmate's sentence. <u>Id.</u> at 485. The nature of plaintiff Conner's confinement in disciplinary segregation was found similar to that of inmates in administrative segregation and protective custody at his prison. <u>Id.</u> at 486.

Focusing on the nature of the punishment instead of on the words of any regulation, the <u>Sandin</u> Court held that the procedural protections in <u>Wolff</u> were inapplicable because the "discipline in segregated confinement did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest." <u>Id.</u> The Court examined the nature of Conner's disciplinary segregation and found that "[b]ased on a comparison between inmates inside and outside disciplinary segregation, the State's actions in placing him there for 30 days did not work a major disruption in his environment." <u>Id.</u> In the final holding of the opinion, the Court stated "that neither the Hawaii prison regulation in question, <u>nor the Due Process Clause itself</u>, afforded Conner a protected liberty interest that

would entitle him to the procedural protections set forth in Wolff." Id. at 487 (emphasis added).[4]

Even if the Wolff requirements were not complied with at the instant misconduct hearing, Chaffin's complaint, in light of Sandin, is without merit because he does not have a liberty interest in remaining free from disciplinary confinement and the procedural due process protections set forth in Wolff do not apply. Furthermore, the incidents of disciplinary confinement in the present case are not materially different than those the Supreme Court found to be "not atypical" in Sandin, and they do not differ appreciably from those of administrative custody.

This Court and others within this Circuit, applying Sandin in various actions, have found no merit in the procedural due process claims presented. See

---

4. The Sandin Court relied on three factors in making this determination: (1) confinement in disciplinary segregation mirrored conditions of administrative segregation and other forms of discretionary confinement; (2) based on a comparison between inmates inside and outside segregation, the state's action in placing the inmate there did not work a major disruption in the inmate's environment; and (3) the state's action did not inevitably affect the duration of inmate's sentence.

Furthermore, the majority in Sandin viewed administrative or protective custody as "not atypical" and within the "ordinary incidents of prison life." 515 U.S. at 484-86. Specifically, the Court stated that "Conner's confinement did not exceed similar, but totally discretionary confinement in either duration or degree of restriction." Id. at 486. Consequently, the appropriate point of comparison is between disciplinary segregation and other forms of discretionary segregation, not general population conditions.

Marshall v. Shiley, et al., Civil No. 94-1858, slip op. at 7 (M.D. Pa. July 26, 1996) (McClure, J.) (holding, pursuant to Sandin, that where the plaintiff alleges only that he was sentenced to sixty (60) days in disciplinary segregation, under Sandin, he cannot assert a claim for the violation of his Fourteenth Amendment rights); Muse v. Geiger, et al., Civil No. 94-0388, slip op. at 4 (M.D. Pa. September 29, 1995) (Nealon, J.) (holding, pursuant to Sandin, that the procedural due process claims are meritless because the punishment twice imposed was thirty (30) days in disciplinary segregation, which differs little from administrative segregation); Beckwith v. Mull, Civil No. 94-1912, slip op. at 9-12 (M.D. Pa. September 27, 1995) (McClure, J.) (holding, pursuant to Sandin, that the procedural due process claims must fail because the punishment was twenty (20) days in disciplinary segregation); Sack v. Canino, No. CIV. A. 95-1412, 1995 WL 498709, at *1 (E.D. Pa. August 21, 1995) (holding in the alternative, pursuant to Sandin, that the defendants deserved summary judgment on the procedural due process claims because the plaintiff's punishment was thirty (30) days in disciplinary segregation); Brown v. Stachelek, No. CIV. A. 95-522, 1995 WL 435316, at *3-4 (E.D. Pa. July 20, 1995) (holding, pursuant to Sandin, that the plaintiff's procedural due process claims would be dismissed because the plaintiff's punishment was thirty (30) days in disciplinary segregation); Colatriano vs. Williams, No. CIV. A. 94-292-SCR, 1995 WL 396616,

at *2-3 (D. Del. June 23, 1995) (holding, pursuant to Sandin, that neither the Due Process Clause nor state law supported the plaintiff's procedural due process claims because his punishment, at most ninety (90) days in "close custody" and a loss of "minimum status", was not outside the scope of his sentence and did not otherwise violate the Constitution). Considering the rules of law set forth in Sandin, this Court finds that Chaffin's due process claims resulting from his placement in disciplinary segregation are meritless because he had no protected liberty interest in the first place.

Moreover, the Third Circuit Court of Appeals has held that prolonged confinement in administrative custody is not cruel and unusual punishment in violation of the Eighth Amendment. Griffin v. Vaughn, 112 F.3d 703, 709 (3d Cir. 1997). An inmate placed in administrative custody pursuant to a legitimate penological reason can "be required to remain there as long as that need continues." Id. Thus, Plaintiff has failed to state a due process claim related to any misconduct charge or any period of confinement in the RHU, and these claims should be dismissed.

To the extent that Plaintiff seeks to "not get transferred due to filing this civil rights claim", it is well established that the United States Constitution does not confer any right upon an inmate to any particular custody or security classification.

Moody v. Daggett, 429 U.S. 78, 88, (1976); Montanye v. Haymes, 427 U.S. 236, 242 (1976). Thus, inmates do not have a liberty interest in retaining or receiving any particular security or custody status "[a]s long as the [challenged] conditions or degree of confinement is within the sentence imposed ... and is not otherwise violative of the Constitution." Id. Similarly, it has long been recognized that prison transfer decisions, standing alone, do not constitute cruel and unusual punishment in violation of the Eighth Amendment to the Constitution. See Hassain v. Johnson, 790 F.2d 1420 (9th Cir. 1986); Serrano v. Torres, 764 F.2d 47 (1st Cir. 1985). Even inmate transfers to facilities far from their homes do not rise to the level of cruel and unusual punishment. See, Gov't of Virgin Island v. Gereau, 592 F.2d 192 (3d Cir. 1979) (discussing transfer from the Virgin Islands to mainland); Rodriguez–Sandoval v. United States, 409 F.2d 529 (1st Cir. 1969) (considering transfer from Puerto Rico to Atlanta). Well-settled law establishes that prisoners have no inherent constitutional right to placement in any particular prison, to any security classification, or to any particular housing assignment. See Olim v. Wakinekona, 461 U.S. 238, 245 (1983); Meachum v. Fano, 427 U.S. 215 225 (1976); Montanye, 427 U.S. at 242; Bulger v. U.S. Bureau of Prisons, 65 F.3d 48 (5th Cir. 1995); Marchesani v. McCune, 531 F.2d 459 (10th Cir.), cert. denied, 429

U.S. 846, (1976). Simply put, as a legal matter Chaffin has no constitutional right to choose his prison.

Finally, to the extent that Plaintiff seeks damages, as well as the expungement of the disciplinary proceeding, in <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994), the Supreme Court ruled that a constitutional cause of action for damages does not accrue "for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid," until the plaintiff proves that the "conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." <u>Id</u>. at 486-87.

In <u>Edwards v. Balisok</u>, 520 U.S. 641 (1997), the Supreme Court extended the rationale in <u>Heck</u> to disciplinary proceedings, holding that the expungement of the inmate disciplinary proceeding would imply the invalidity of the underlying disciplinary action, stating: "[t]he principal procedural defect complained of by the respondent would, if established, necessarily imply the invalidity of the deprivation of his good-time credits." <u>Edwards</u>, 520 U.S. at 646. Accordingly, an inmate may not bring a civil rights action for damages related to an

inmate disciplinary proceeding without first challenging and overturning, via appropriate proceedings, the disciplinary hearing in question. Id. at 646-47.

Because Plaintiff's disciplinary proceeding has not been determined to be unlawful, it is appropriate to dismiss his claim for damages as he cannot, under Heck, maintain a civil rights action for unlawful imprisonment until the basis for that imprisonment is rendered invalid. Additionally, as the basis for Plaintiff's misconduct, specifically infringement of the prison rules and regulations, has not been invalidated, Plaintiff cannot pursue an action for monetary damages against the named Defendants.

Under the circumstances, the Court is confident that service of process is not only unwarranted, but would waste the increasingly scarce judicial resources that § 1915 is designed to preserve. See Roman v. Jeffes, 904 F.2d 192, 195 n.3 (3d Cir. 1990).

A separate order will be issued.

Dated: April 23, 2014

_____
United States District Judge